Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Telephone: (301) 444-4600
E-mail: mac@dcbankruptcy.com
*Counsel for Benjamin Srigley*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-116-ELG |
| | ) | (Chapter 7) |
| TOUCHSTONE REMODELERS, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**OPPOSITION TO MOTION FOR AN ORDER GRANTING
DERIVATIVE STANDING TO PROSECUTE ON BEHALF OF THE
ESTATE, CLAIMS AGAINST THE DEBTOR, BENJAMIN ROBERT SRIGLEY,
CYNTHIA TYBURCZY SRIGLEY, AND SRIGLEY DEVELOPMENT COMPANY, LLC**

Comes now Benjamin Srigley ("Mr. Srigley"), by and through undersigned counsel, pursuant to Local Rule 9013-1, and in opposition to the Motion for an Order Granting Derivative Standing to Prosecute on Behalf of the Estate, Claims Against the Debtor, Benjamin Robert Srigley, Cynthia Tyburczy Srigley, and Srigley Development Company, LLC (the "Motion," as found at DE #29) filed by Federico M. Bandi ("Mr. Bandi") and Angela M. Bandi ("Ms. Bandi") (Mr. and Ms. Bandi being collectively known as the "Movants" or "Bandis," and each known as a "Movant" or "Bandi") and states as follows:

I.     **Introduction**

This case was commenced in an effort to bring closure to the Bandis' vexatious and unyielding efforts to seek relief from the Touchstone Remodelers, LLC ("Touchstone" or the "Debtor"). Touchstone is—and at all times relevant has been—a zombie entity, decimated pre-

1

petition by the Bandis and burdened by enormous debts well exceeding any quantification of the few, if any, theoretical assets that may remain. William White, the Chapter 7 trustee herein ("Mr. White" or the "Trustee") has seemingly, albeit not expressly, come to appreciate these unfortunate realities, showing little—if any—interest in taking on the ill-founded and bad faith litigation tactics being championed by the Bandis. And so, now confronted with the reality that their campaign of home improvement retribution may no longer persist, the Bandis seek derivative standing, in a last-gasp effort to wrest the Trustee's authority away and burden this Honorable Court with their vengeance-driven claims.

The Motion should be denied, however, for three reasons: (i) the Bandis are laypersons unrepresented by counsel and, as such, cannot pursue a derivative adversary proceeding without engaging in the unlicensed practice of law; (ii) the Bandis have failed to show there exists a colorable claim to be pursued; and (iii) the Bandis have failed to show that the Trustee has unjustifiably refused to pursue a colorable claim.

The first issue is necessarily dispositive: while Ms. Bandi appears to hold a law degree and to be a former member of one or more bars, she is not an attorney. Mr. Bandi is not now, and never has been, an attorney. Neither is licensed to practice law in this Honorable Court nor is either eligible for admission to the bar of this Honorable Court. Yet derivative claims can only be pursued by attorneys since, as a matter of law, the pursuit of a derivative claim is the advancement of a legal cause on behalf of another and, as such, constitutes engagement in the practice of law.

The second and third issues need not be reached in light of the first but would, too, be dispositive: what the Bandis essentially bemoan is that the Chapter 7 trustee, after reviewing the onslaught of documents provided by the Bandis, has not found cause sufficient to justify pursuing litigation claims. His determination that such efforts ought not be advanced, while certainly subject

to allowable judicial challenge, is entitled to palpable deference under Title 11 of the United States Code (the "Bankruptcy Code") and governing precedent. Yet the Bandis make no showing of the requisite cause in their Motion, instead advancing an *ipso facto* theory whereby litigation ought to be pursued because they say litigation ought to be pursued.

This is not the first bankruptcy proceeding to be filed in an effort to alleviate a debtor of the vexatious efforts of creditors who have made it their cause du jour to transmute a run-of-the-mill judgment into grounds upon which to endlessly harass the obligor thereupon. Nor will this likely be the last such case. But the Bankruptcy Code is designed, in no small part, to remove such pretextual efforts from the overly impassioned grasp of disgruntled creditors and place such in the sound judgment of a professional trustee. The Trustee in this case has shown no interest in exacting a pound of flesh for sport; there is no reason the Bandis ought to be permitted to engage in the unlicensed practice of law so that they may do so in his stead.

II. **Argument: The Proposed Relief Would Countenance the Unlicensed Practice of Law**

Inherent in derivative standing is the pursuit of one or more claims on behalf of one or more third parties. And, by definition, when one advances a legal claim on behalf of a third party, one is engaging in the practice of law. The Bandis are seeking to represent the Trustee—and, by extension, the estate—in bringing litigation claims. This is not only impermissible but, indeed, the proposal constitutes a violation of the prohibition on the unlicensed practice of law.

Axiomatically, a pro se litigant cannot bring a derivative action. *See, e.g.*, *Fontanez v. Boeing Corp.*, 2022 U.S. Dist. LEXIS 90528, at *3-4 (D.D.C. May 16, 2022) ("Assuming arguendo that plaintiff is a Boeing shareholder, as a pro se litigant, he is nonetheless prohibited from bringing a shareholder derivative suit.") (citing *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993); *Phillips v. Tobin*, 548 F.2d 408, 411-15 (2d Cir. 1976); *Pridgen*

3

*v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)); *Harris v. Wells Fargo Corp. Office Headquarters, HQ*, 2023 U.S. Dist. LEXIS 5894, at *6 (D. Md. Jan. 11, 2023) ("A pro se plaintiff cannot maintain a derivative action.") (quoting *Bluefeld v. Cohen*, 2017 WL 1546406, at *3 (D. Md. Apr. 27, 2017)); *Achilles v. Hoskins (In re Theos Fedro Holdings, LLC)*, 2023 Bankr. LEXIS 2979, at *8 n.7 (B.A.P. 9th Cir. Dec. 20, 2023) ("Achilles also purports to appeal as trustee of his personal trust. But trusts must be represented by licensed counsel. A pro se litigant cannot represent a separate and distinct legal entity in federal appeals.") (citing *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004)).

Complicating matters even more, the pursuit of a derivative claim by a non-attorney is not merely impermissible but, too, contemptuous. Under District of Columbia law, the unlicensed practice of law is punishable "as contempt" by the District of Columbia Court of Appeals. D.C. Ct. App. Rule 49(e)(1). And there is little question but that the regime proposed by the Bandis would amount to the unlicensed practice of law, insofar as they would necessarily be ". . . preparing any claim, demand, or pleading of any kind, or any written document containing legal argument or interpretation of law, for filing in any . . . court, or other tribunal." D.C. Ct. App. Rule 49(b)(2)(D).

Critically, neither of the Bandis are attorneys. *See* Motion, DE #29, at ¶ 27 ("With respect to the three options suggested by the Trustee, described *supra* in ¶ 24, we explained again to him that we would not be hiring an attorney, but that we would be representing ourselves *pro se*. . ."). And while District of Columbia law very familiarly permits attorneys licensed in other states to become members of the bar of this Honorable Court, either directly or *pro hac vice*, without running afoul of the prohibition on the unlicensed practice of law, D.C. Ct. App. Rule 49(c)(3), neither of the Bandis are licensed in any other state. *See* Motion, DE #29, at ¶ 29 (noting that Ms.

4

Bandi is not "currently admitted to practice before the United States District Court for the District of Columbia or any other court.").

Quite simply, the Trustee is not seeking—and cannot seek—to engage the Bandis as special counsel, insofar as the Bandis are not attorneys. 11 U.S.C. § 327. So the Bandis are endeavoring, instead, to end-run the normative representation methodology by petitioning for derivative standing so they may represent the estate's interests without being engaged by the Trustee. Yet they cannot do so for the same reason that they cannot represent *anyone's* legal interests without running afoul of the prohibition on the unlicensed practice of law.

This proposal is not merely improper but, too, illegal. And for that reason, the Motion merits denial.

### III.     Argument: The Motion Does Not Satisfy the *Yelverton* Criteria

There is no reported precedent, in the history of this Honorable Court, in which a creditor has been granted standing to pursue litigation derivatively on behalf of a trustee.[1] The sole topical case, from this circuit, to address such an arrangement is *Webster v. Senyi De Nagy-Unyom (In re Yelverton)*, 2012 Bankr. LEXIS 1653 (Bankr. D.D.C. Apr. 11, 2012), where derivative standing was denied.

*Yelverton* starkly sets forth the core problem with parties seeking derivative standing: "If the trustee is acting in the best interest of the estate, it is unclear why the court would exercise its equitable powers to grant another party derivative standing to pursue these claims." *Id.* at *7.

---

[1] Undersigned counsel is aware of one unreported instance of such standing being conveyed, in a markedly *sui generis* case where a trustee was without resources to pursue Chapter 5 claims against a foreign national and a creditor, represented by licensed counsel, offered to do so. Notably, however, that isolated occurrence did not invite a published—or unpublished—memorandum opinion.

Accordingly, this Honorable Court therein suggested—without expressly adopting, outside of dicta—a stringent two prong test to assess whether derivative standing may even be contemplated in the first instance: (i) the existence of a colorable claim; and (ii) a trustee's unjustified refusal to pursue such a claim. *Id.* Moreover, even with a showing of both of these elements, "[a] creditor's request for derivative standing must be supported by competent evidence, for example, in the form of affidavits or through oral testimony at an evidentiary hearing." *Id.* at \*9 (quoting *PW Enters. v. N.D. Racing Comm'n (In re Racing Servs.)*, 540 F.3d 892, 900 n.8 (8th Cir. 2008)).

The existence of a colorable claim is sorely lacking *sub judice*. The Motion, coupled with the various exhibits appended thereto, reveals ultimately that the Bandis are upset—very upset— that a contractor did not complete a home renovation job. They are so upset that they filed suit. And they prevailed in that suit. But they now wish to suggest that every single dollar expended by the Debtor, and every single use of resources by the Debtor, was some part of a grand scheme to defraud the Bandis. They are unwilling (if not incapable) of accepting that contractors do, with some frequency, run out of monies during projects and encounter a need to walk away from the subject projects. So they instead look to the orchestrations of a grand scheme in which a struggling company's every effort at staying afloat was not the working of a good faith endeavor to honor obligations to clients but, rather, a sinister ruse to work harm.

Which necessarily goes to the second criterion: the Bandis have produced a truly overwhelming quantity of papers in this case and, per the Motion, have apparently inundated the Trustee with their every thought and scrap. Yet the Trustee, with more than three decades of experience administering estates in this Honorable Court, has elected to not pursue the outlandish and sanctionably frivolous claims being championed by the Bandis. This despite the fact that he is

6

economically incentivized to do so if the claims have any merit whatsoever, 11 U.S.C. § 326, and despite the fact that he has been presented with myriad opportunities to do so.

The Trustee's actions are not unjustifiable. He is clearly electing, as so many Chapter 7 trustees do on a daily basis, to not pursue litigation claims that are without any clear merit and that would expose the Debtor's estate to the prospect of significant economic sanctions if met with a motion under Rule 9011. He is, as noted by the *Yelverton* Court, acting in the best interests of the estate in exercising judgment to not chase wild and unruly claims moored only to the darkest conspiratorial beliefs of two layperson creditors who clearly carry a hefty vendetta against the Debtor and its principals. And, in so doing, he is wholly justified, recognizing that bankruptcy is designed to retire such spats and bring a civil close to the affairs of Montagues, Capulets, Sharks, Jets, Hatfields, and McCoys.

### IV.     Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court deny the Motion and afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

<table>
<tr><td>Dated: November 3, 2024</td><td>Respectfully submitted,<br><br>By: /s/ Maurice B. VerStandig<br>Maurice B. VerStandig, Esq.<br>Bar No. MD18071<br>The Belmont Firm<br>1050 Connecticut Avenue, NW<br>Suite 500<br>Washington, DC 20036<br>Telephone: (301) 444-4600<br>E-mail: mac@dcbankruptcy.com<br>*Counsel for Mr. Srigley*</td></tr>
</table>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of November, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

8