William Douglas White
8205 Pettit Court
Mclean Virginia 22102
703 770-9265
wdw@mccarthywhite.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

In re:

                              Case No. 23-00116-ELG

                              Chapter 7

TOUCHSTONE REMODELERS, LLC,
Debtor.

---

TRUSTEE'S RESPONSE TO MOTION FOR AN ORDER GRANTING DERIVATIVE STANDING TOPROSECUTE ON BEHALF OF THE ESTATE, CLAIMS AGAINST THE DEBTOR, BENJAMIN ROBERT SRIGLEY, CYNTHIA TYBURCZY <u>SRIGLEY, AND SRIGLEY DEVELOPMENT COMPANY, LLC</u>

     William Douglas White, Trustee responds to the Motion of Federico Bandi and Angela Bandi (the "Bandis" or "Movant"}granting derivative standing to prosecute claims against the Debtor, Benjamin Srigley, Cynthia Srigley and Srigley Development Company LLC.  In support of his response, the Trustee states that he conducted an extensive and laborious 341 creditors' meeting in this case that provided meaningful assistance to the Bandis in their effort to investigate the financial affairs of the Debtor.  In effect, the Bandis acknowledged that in their allegations of their 2004 motion.  Second, the estate has no funds itself and it would be difficult at best to undertake uncompensated, expensive and time consuming litigation.  Further, even assuming the claims are indeed colorable, what is the likelihood that any judgment will be collectible?  Third, the Trustee has requested the Bandis' participation to assist the estate in establishing collectible claims under Title 5 of the Bankruptcy Code.  Fourth, the case law in this jurisdiction, which the Bandis concede, has not previously approved a creditor's action based on derivative standing.

   A.   The Trustee Conducted A Thorough Examination Of The Debtor Pursuant To The Meetings
       of <u>Creditors Under Section 341 Of The Bankruptcy Code</u>

1

1. The Debtor filed a voluntary chapter 7 on April 28, 2023, and the first creditors meeting was scheduled for June 1, 2023.Prior to the creditors meeting, the Trustee requested specific documents from the Debtor in advance of the meeting. The Trustee conducted the initial meeting on June 1, 2023 in which the principal on behalf of the Debtor attended with counsel and testified.  The Trustee examined the Debtor and the Bandis also questioned the Debtor for approximately for an hour and a half..

2. At the conclusion of the testimony of June 1, 2023, the Trustee scheduled the Debtor to attend a continued meeting to conduct additional testimony and to receive in advance the remaining documents requested but which were not received as of June 1st.  All parties agreed to schedule the continued meeting for July 11, 2023.

3. After the meeting on June 1, the Bandis advised the Trustee that they would not be able to attend the continued meeting on July 11, 2023 and requested a different date for the continued meeting. The Bandis stated that their first date available after July 11 would be after August 4, 2023.  In addition, the Bandis requested the Trustee to request specific additional documents from the Debtor.

4. Pursuant to the Bandis request, the Trustee compiled a list of additional documents the Bandis' requested along with additional documents the Trustee intended to request.  The Trustee forwarded the proposed list to the Bandis on July 1, 2023 and confirmed the list with the Bandis on July 2nd.  On July 2, 2023 the Trustee emailed Debtor's counsel and identified the list of additional documents needed from the Debtor.  The Trustee also emailed Debtor's counsel that it would be necessary to reschedule the continued meeting from July 11 to another agreeable date after August 4, 2023 and that the additional documents would be needed in advance of the continued date of the meeting.

5. On July 10, 2023 the Trustee notified Debtor's counsel that an immediate response from the Debtor to the July 2nd email so that an agreed August continued meeting would permit time time for documents to be produced and reviewed in advance of the meeting.  Debtor's counsel advised that the only conflict dates for August and that there would be no problem with sending the requested documents.

2

The Trustee confirmed possible meeting dates again with the Bandis and emailed Debtor's counsel that the continued meeting would be set for August 9, 2023 and that it would be necessary for Debtor to provide all requested documents by July 21st at the earliest.

6. On July 18, 2023, the Trustee's email confirmed with Debtor's counsel that the necessary documents would be produced by July 21st in advance of the August 9th continued meeting. When the Debtor failed to produce documents on July 21st, the Trustee advised Debtor's counsel on July 22, 2023 that no documents had been produced. When no response was received, the Trustee again emailed Debtor's counsel on August 1, 2023 that Debtor still had not produced documents required by July 21, 2023 and that the Debtor was not cooperating in the production of necessary documents.

7. The Trustee did not receive documents from the Debtor's counsel until August 5, 2023. The documents produced did not include all of the documents requested by the Trustee and the Bandis and did not provide an explanation why those documents were not produced. The Trustee forwarded the documents produced by Debtor's counsel to the Bandis on August 7, 2023.

8. The Trustee convened the scheduled meeting of creditors on August 9, 2023 in which the Bandis participated. Debtor's counsel appeared, but the Debtor's principal, Mr. Srigley did not appear to testify. The additional documents not provided were further discussed with counsel. Given that the Debtor's principal did not appear and portions of documents had still not be produced, the Trustee continued meeting of creditors to an agreed date of September 8, 2023 with agreement to produce the additional documents by August 22, 2023.

9. On September 4, 2023, Debtor's counsel forwarded one promised document concerning a vehicle from the Debtor which the Trustee also forwarded to the Bandis. On September 7, 2023 the Trustee emailed Debtor's counsel that the Debtor was to provide copies of the principal's Schedule C from his tax returns to provide to the Bandis. Thereupon, counsel emailed copies of the Schedule Cs for the principal's tax returns for 2020 and 2021 to the Bandis..

10. Following up on the August 9, 2023 proceedings, the Trustee convened another meeting of

creditors on September 8, 2023. The Debtor's principal appeared and testified and the Bandis and the Trustee examined the Debtor for over 2 hours. The Debtor agreed to provide any requested additional documents that had not produced that were in its possession. At the conclusion of the meeting on September 8th, the Trustee scheduled a conference call with the Debtor's principal for October 6, 2023 to go over the status of additional documents that had been requested but not produced.

11. On September 28, 2023 the Trustee emailed Debtor's counsel again reminding the Debtor at the September 8th meeting, the Debtor agreed to produce any additional requested documents during the week of September 11-15, 2023. Immediately prior to the conference call on October 6th, the Debtor's counsel produced documents pertaining one of the Debtor's vehicles. Debtor's counsel advised that the vehicle had been repossessed. The Trustee forwarded those documents to the Bandis. At the conference call on October 6, 2023, the Bandis participated again in the conference call and questioned the Debtor concerning the requested documents. The Debtor's principal largely stated that the requested documents had not been produced because they were not in his possession. As to certain other documents, the Debtor asserted that those documents were outside the scope of the meeting of creditors and that those documents would only be produced in an examination pursuant to a Rule 2004 examination.

12. Given the failure to produce certain documents that the Debtor testified it was not able to provide and the failure to produce other documents that the Debtor alleged were outside the scope of a 341 meeting, it was apparent on the call that the Bandis intended to pursue additional discovery pursuant to a 2004 examination. On October 18, 2023 the Bandis forwarded a copy to the Trustee of their Rule 2004 motion and proposed order. That motion was granted by this Court and set in motion a process to discover documents and testimony necessary to pursue litigation to justify any alleged transfers of the Debtor.

B. <u>The Estate Lacks Any Funds In The Case At This Time</u>

13. The process of the Trustee's administration of the meeting of creditors over four months required nearly100 emails among the participants, produced scores of documents and consumed a significant number of hours in attempting to coordinate and schedule the continued meetings. From the

4

outset, the Trustee advised the Bandis that the estate had no funds and would have limited ability to engage in litigation for the pursuit of avoidance actions barring some obvious low hanging fruit that could generate monies for the estate. Further the Trustee advised the Bandis that the process of conducting a 341 meeting was not a deposition and that extended discovery would have to be pursued under a Rule 2004 exam.

    C.   <u>The Trustee Has Requested The Bandis' Assistance In The Pursuit Of Potential Actions</u>

    14. Thereafter, the Trustee assumed that the Bandis (armed with their knowledge of their prior arbitration and judgment proceedings, the additional accumulation of documents and testimony in the 341 meetings and their efforts to place numerous third parties under subpoena pursuant to a 2004 examination) that the Bandis would collaborate with the Trustee in an effort to expand on alleged transfers and find a method of pursuing any potential avoidable transfers and any other actions for which the estate could pursue.

    15. Instead, after 9 months of discovery pursuant to subpoena, the Bandis notified the Trustee on July 5, 2024 that Bandis were requesting the Trustee's consent to their effort to pursue derivative standing to undertake an avoidance action on behalf of the estate. The Trustee advised the Bandis that there were potential other avenues to pursue an avoidance action without requesting authority to file a motion for derivative standing. Those other efforts were available then and still are available subject to Court approval. However, the Bandis rejected any of those efforts and insisted on moving for an order to approve their request for derivative standing.

    D.   <u>Case Law In This Jurisdiction Has Not Approved A Creditor's Action On Derivative Standing</u>

    16. To date, the Courts of this jurisdiction have not permitted a creditor in a bankruptcy to undertake derivative standing. The Bandis concede that no such authority in this District exists and rely upon authority from other jurisdictions where the courts have approved requests for derivative standing. Moreover, even it were assumed that such authority existed in this jurisdiction, the Bandis will be required to demonstrate (1) what are the probabilities of legal success (2) the likelihood of the financial recovery and (3) the anticipated delay to the bankruptcy estate that the continuation would likely

produce. Webster v. Senyi De Nagi (In re Yelverton) 2012 Bankr. LEXIS 1653 (Bankr. D.C. April 12, 2012); see Rockstone Capital LLC v. Walker-Thomas Furniture (In Re Smith) 2006 Bankr. LEXIS 737 (Bankr. D.C.  Feb. 27, 2006).

                                        Respectfully submitted,

                                        /s/William Douglas White
                                        William Douglas White, Trustee
`                                       8205 Pettit Court
                                        Mclean Virginia 22102
                                        703 770-9265
                                        wdw@mccarthywhite.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2024, I caused a copy of the foregoing to be sent electronically to all parties on the Court's ECF mailing list.

                                                            /s/William Douglas White