Federico M. Bandi
Angela M. Bandi
3606 Chesapeake Street, NW
Washington, DC 20008
Telephone: 773.620.1932
Email: fbandi1@jhu.edu
      angela.bandi@yahoo.com



**FILED**

AUG 2 7 2025

Clerk, U.S. District and
Bankruptcy Courts

*Unsecured Judgment Creditors of Touchstone Remodelers, LLC, filing Pro Se*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | |
| TOUCHSTONE REMODELERS, LLC,<br>      Debtor. | Case No. 23-00116-ELG<br>Chapter 7 |
| | |
| FEDERICO M. BANDI and<br>ANGELA M. BANDI,<br>      Plaintiffs, | |
| vs. | Adv. Pro. No. 25-10009-ELG |
| BENJAMIN ROBERT SRIGLEY,<br>CYNTHIA TYBURCZY SRIGLEY,<br>TOUCHSTONE REMODELERS, LLC and<br>SRIGLEY DEVELOPMENT COMPANY,<br>LLC,<br>      Defendants. | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN CONNECTION WITH THEIR
## MOTION FOR AN ORDER GRANTING DERIVATIVE STANDING

On August 13, 2025, a hearing was held in this honorable Court in connection with the

above-captioned case (the "**Case**") under Chapter 7 of Title 11 of the United States Code (the

"**Bankruptcy Code**") and associated adversary proceeding. The hearing was set to discuss the

*Motion for an Order Granting Derivative Standing to Prosecute on Behalf of the Estate, Claims Against the Debtor, Benjamin Robert Srigley, Cynthia Tyburczy Srigley. and Srigley Development Company, LLC* (the "**Motion for Derivative Standing**") (Dkt. No. 29 (Case No. 23-00116-ELG)) filed with this Court by Federico M. Bandi and Angela M. Bandi (jointly, the "**Bandis**" or the "**Plaintiffs**"), unsecured judgment creditors of the above-named Debtor, Touchstone Remodelers, LLC, as well as the *Motion to Dismiss* of Defendants Benjamin Srigley, Cynthia Srigley and Srigley Development Company, LLC (the "**Motion to Dismiss**") (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)), which raised the issue of Plaintiffs' standing to prosecute their claims.

The primary issue discussed in the hearing was whether this Court should grant Plaintiffs derivative standing to prosecute certain claims against Defendants so that they may move forward with their Complaint (Dkt. No. 1 (Adv. Pro. No. 25-10009-ELG)).

During the course of the hearing, two issues arose for which the Court requested supplemental briefing from the parties, to be submitted on or before August 27, 2025:

(1) whether courts granting requests for derivative standing distinguish in their analysis between, or apply a different standard to, causes of action arising directly from the Bankruptcy Code, such as preference and avoidance actions under sections 547 and 548, and causes of action arising from state law, which may have existed prior to the filing of the bankruptcy petition, such as state-law based avoidance actions under section 544(b) of the Bankruptcy Code and other state-law based claims asserting harm to the debtor, e.g., breach of fiduciary duties, wrongful distributions, and veil-piercing remedies (collectively, "**pre-petition claims**");[1] and

(2) whether section 327 of the Bankruptcy Code applies in the context of derivative standing.

In support of their position, Plaintiffs respectfully state as follows:

---

[1] Plaintiffs are using the term "pre-petition claims" for ease of reference, but note that there may be circumstances in which this terminology is not quite accurate.

I. **Courts Analyzing Requests for a Grant of Derivative Standing Have Not Applied Different Standards Based on the Plaintiffs' Underlying Causes of Action**

1.      In their Complaint, Plaintiffs allege the following causes of action against Defendants: avoidance of fraudulent transfers under section 548(a)(1) of the Bankruptcy Code (Counts I and II); avoidance of fraudulent transfers under sections 544(b) and 550 of the Bankruptcy Code and pursuant to D.C. Code § 28-3104(a) (Counts III and IV); breach of fiduciary duties (Count V); liability for improper distributions (Count VI); common law conspiracy (Count VII); and alter ego liability (Count VIII).

2.      Defendants have already acknowledged that "[e]very cause of action asserted in the Complaint belongs to the bankruptcy estate" and that "each [cause of action set forth in the Complaint], without exception, is a claim that may be brought only by the trustee, or a party who has been granted derivative standing through proper judicial process" and have described those causes of action as "estate-based claims." *See* Motion to Dismiss at 1-2 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

3.      With respect to the "estate-based avoidance claims"[2] set forth in Counts I-IV of the Complaint, Defendants again state that these claims are causes of action which belong to the estate and which the trustee may properly assert. They do not distinguish between the trustee's authority to prosecute federally-based avoidance actions brought under section 548 and state-based avoidance actions brought under section 544(b), nor do they state either category of claims may not be properly brought by a party who has been granted derivative standing. To the contrary, Defendants recognize that the trustee has authority to prosecute such actions under

---

2 *See* Motion to Dismiss at 8 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

either federal or state law.

> ["]Quite plainly, Section 544(b) and 548 of the Bankruptcy Code expressly vests in the trustee or debtor-in-possession the right to assert a claim for fraudulent conveyance under state or federal law." *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.),* 117 B.R. 789, 799-800 (Bankr. S.D.N.Y. 1990). "It is axiomatic that a duly qualified trustee in bankruptcy represents the estate and is the only proper party to maintain any action under Bankruptcy Code § 544(b)..." *Best Mfr., Inc. v. White Plains Coat & Apron, Inc. (In re Daniele Laundries, Inc.),* 40 B.R. 404, 408 (Bankr. S.D.N.Y. 1984).

Motion to Dismiss at 8 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

4.    Defendants additionally acknowledge that Plaintiffs' remaining claims set forth in the Complaint (Counts V-VIII) are causes of action which may properly be asserted by the trustee. "Courts uniformly hold that breaches of fiduciary duty, wrongful distributions, and veil piercing allegations premised on undercapitalization or misuse of the corporate form belong to the estate when asserted in the context of alleged harm to the debtor. See *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984)." Motion to Dismiss at 9 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)).

5.    Plaintiffs do not disagree that all of the causes of action contained in their Complaint are claims which may be brought by the trustee, or by a party who has been granted derivative standing through proper judicial process. It is for this reason that Plaintiffs brought their Motion for Derivative Standing before this Court.

6.    At the August 13th hearing, however, Defendants seemed to claim that, in the context of derivative standing, there is a distinction between (1) federally-based avoidance actions under section 548 of the Bankruptcy Code; and (2) and state-law based avoidance actions under section 544(b) of the Bankruptcy Code or other state law causes of action, such that the standard the Court applies to determine whether a grant of derivative standing is proper should

differ based on whether the underlying causes of action fall under (1) or (2) above.

7.    Defendants' position is not supported by authority. To the contrary, in analyzing

whether a grant of derivative standing is proper, courts have not distinguished in their analysis

between federally-based avoidance actions pursuant to sections 547, 548 and 549, or other

provisions of the Bankruptcy Code, state-law based avoidance actions pursuant to section 544 of

the Bankruptcy Code, or any other state-law based claims.

8.    In the context of derivative standing, the court in *In re Pursuit Capital Mgmt.,*

*LLC* made clear that avoidance actions under section 544 of the Bankruptcy Code and those

under section 548 should not be treated differently. "Fraudulent transfer actions, whether brought

under § 544(b) or § 548, do not belong to a debtor; '[t]hey are creatures of statute, available in

bankruptcy solely for the benefit of creditors of the debtor, whose rights the trustee enforces.'"

*Claridge Assoc., LLC v. Schepis (In re Pursuit Capital Mgmt., LLC)*, 595 B.R. 631, 671 (Bankr.

D. Del 2018).

> As the Third Circuit stated [in *Cybergenics*], in enacting § 544, Congress expressed its
> intention that state-law based fraudulent conveyances be recovered in order to maximize
> the value of the estate. The same policy underlies federally-based fraudulent transfer
> actions under § 548 as this provision incorporates the law of fraudulent transfer into the
> Bankruptcy Code. In both §§ 544 and 548, the power and duty to bring fraudulent
> transfer actions is vested in a trustee. When a trustee refuses to bring the action, the
> bankruptcy court can invoke its equitable powers to effect the result the Bankruptcy
> Code was designed to obtain even if the remedy was not directly authorized by the
> Bankruptcy Code. There is simply no basis in the Bankruptcy Code for interpreting §
> 503(b)(3)(B), § 544 or § 548 differently in the chapter 7 context.

*See In re Pursuit Capital Mgmt., LLC*, 595 B.R. at 659 (citing, *inter alia, Official Comm. of*

*Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery* ("*Cybergenics*"),

330 F.3d 548, 568-69 (3d Cir. 2003) (en banc)) (other citations omitted). *See also Hyundai*

*Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source)*, 555 F.3d 231 (6th

Cir. 2009).

9.      Further, the court in *In re Pack Liquidating, LLC*[3] explicitly recognized that

claims other than avoidance actions may be the subject of a derivative standing suit. The court

rejected the defendants' argument that, even if a bankruptcy court may in certain circumstances

authorize derivative standing, such authorization would only apply to avoidance actions under

section 544 of the Bankruptcy Code, but not to other claims, such as those for breach of fiduciary

duty.

> [R]eading *Cybergenics* to be limited to avoidance actions, and not to extend to other
> potentially valuable estate causes of action that a debtor in possession [or individual
> creditor] declines to pursue, is to take an unduly blinkered approach to the Third
> Circuit's decision. The opinion explains, after all, that the Bankruptcy Code effectively
> codified the established pre-Code practice of permitting bankruptcy courts to authorize
> derivative standing when the trustee or debtor-in-possession refused to act in the best
> interests of the estate. There is no suggestion that the pre-Code practice was limited to
> avoidance actions. Indeed, the cases on which the Third Circuit relied in describing that
> pre-Code practice included an Eighth Circuit case from 1900 involving a claims
> allowance appeal.

*In re Pack Liquidating, LLC,* 22-10797 at 32 (citing *Cybergenics*, 330 F.3d at 569 (quoting

*Chatfield v. O'Dwyer*, 101 F. 797 (8th Cir. 1900)).

10.      The court in *In re Pack Liquidating, LLC* additionally noted that the Third Circuit

in *Cybergenics* relied heavily on the Second Circuit's decision in *In re Commodore Int'l, Ltd.*.[4]

which involved claims of a creditors' committee against former officers and directors of a debtor

for fraud, waste and mismanagement, for the proposition that the text of section 544(b), which

authorizes the "trustee" to bring certain avoidance avoidance actions, did not mean that *only* the

---

[3] 22-10797 (CTG) (Bankr. D. Del. Feb. 2, 2024)

[4] *Commodore International, Ltd. v. Gould (In re Commodore Int'l, Ltd.)*, 262 F.3d 96 (2d Cir. 2001)

trustee could bring such a lawsuit.

> *Commodore*, however, involved (like this case does) a lawsuit for breach of fiduciary duty. Indeed, the *Commodore* decision makes no reference to § 544 or to an avoidance action. The Third Circuit's reliance on that precedent would therefore have been inexplicable had the Third Circuit believed that its decision were limited to avoidance actions and had no application to suits for breach of fiduciary duty. The Court accordingly rejects the claim that *Cybergenics* does not extend beyond avoidance actions.

*In re Pack Liquidating, LLC*, 22-10797 at 32-33 (citing *Cybergenics*, 330 F.3d at 566 (quoting *In re Commodore Int'l Ltd*, 262 F.3d 96).

11.    The majority of courts addressing the issue of derivative standing have demonstrated implicitly in their rulings that they see no distinction between the nature of the claims a plaintiff who has been granted derivative standing may bring and those that the trustee (or debtor-in-possession) could have brought. "An order granting [derivative] standing simply empowers the committee [or creditor] to act as the voice of the estate with respect to the very same lawsuit the debtor-in-possession [or trustee] could have brought itself. The *Cybergenics* principle…does not alter the *substance* of the estate's entitlements in any way. It affects only the procedures for asserting a claim that the estate in fact holds." *In re Pack Liquidating, LLC*, 22-10797 at 33-34. "Authorizing committee standing is merely 'a procedural device, authorized by the Code, which does not affect state created property interests.'" *Id.* at 34 (quoting *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 252 (5th Cir. 1988)).

12.    Namely, the Second, Third, Fifth, Sixth, Eighth and Ninth Circuits, as well as other courts in those circuits as well as in the Seventh Circuit, have all granted or considered derivative standing, or have determined that a grant of standing was proper, to creditors and creditors' committees in both Chapter 7 and Chapter 11 cases wherein the causes of action to be

prosecuted included federally-based preference and avoidance actions under sections 547, 548, 549, or other sections of the Bankruptcy Code, state-law based avoidance actions under section 544 of the Bankruptcy Code, or other state-law or common-law based causes of action and remedies, including but not limited to, claims against officers and directors for breaches of fiduciary duty, misappropriation or waste of corporate assets. gross negligence, mismanagement, conspiracy to execute fraudulent transfers, claims for turnover and an accounting, and alter ego liability.

13.     In none of these cases, cited in ¶ 14 *infra*, did the court apply a different standard to its analysis of whether a grant of derivative standing was proper, based on the specific nature of the plaintiffs' underlying claims, i.e., whether they were federally-based avoidance actions under the Bankruptcy Code or whether they were pre-petition claims.[5] Rather, the courts' application of different tests in the context of derivative standing turns on whether the trustee (or debtor-in-possession) unjustifiably refuses to bring suit on its own or whether the trustee consents to the plaintiffs' request to pursue the claims. *See Scott v. Nat'l Century Fin. Enter. Inc. (In re Baltimore Emergency Services II, Corp.)*, 432 F.3d 557, 560 (4th Cir. 2005); Motion for Derivative Standing at ¶¶ 42-59; 63-79 (Dkt. No. 29 (Case No. 23-00116-ELG)). In other words,

---

[5] Instead of distinguishing between types of claims, courts have considered the plaintiffs' causes of action generally to determine whether a colorable claim exists. Usually, the analysis applied is whether the claims are sufficiently plausible to survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See* Motion for Derivative Standing at ¶ 47, 72 (Dkt. No. 29 (Case No. 23-00116-ELG)).

Notably, were Plaintiffs' entire Complaint susceptible to a motion to dismiss for failure to state a claim pursuant to FRCP Rule 12(b)(6), Defendants would have moved on those grounds. To the contrary, in their Motion to Dismiss, Defendants solely alleged that, of the eight counts set forth in the Complaint, "the Complaint fails to state a claim for relief as against Ms. Srigley" rather than as against all Defendants, and only with respect to Count V (Breach of Fiduciary Duties), Count VI (Liability for Improper Distributions) and Count VII (Common Law Conspiracy). They did not move to dismiss any of Plaintiffs' avoidance claims. *See* Motion to Dismiss at 3, 17-19 (Dkt. No. 7 (Adv. Pro. No. 25-10009-ELG)). *See also In re Pursuit Capital Mgmt., LLC*, 595 B.R. at 665.

once a court grants derivative standing to plaintiffs to "step into the shoes of the trustee," the plaintiffs have access to the same toolbox that would have been available to the trustee to recover assets for the benefit of the estate.

14.    A selection of relevant case law follows. *See, e.g., Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901 (2d Cir. 1985) (holding that derivative standing was proper wherein debtor-in-possession unjustifiably refused to bring suit; causes of action of creditors' committee included fraudulent conveyance claims, as well as claims against the debtor's president and directors for misappropriation, waste of corporate assets, and unjust enrichment); *In re Commodore Int'l, Ltd.*, 262 F.3d 96 (2d Cir. 2001) (finding that debtors-in-possession consented to committee's prosecution of claims against various former officers and directors of the debtor for fraud, waste, and mismanagement; derivative standing was not granted as the litigation was duplicative and thus not necessary and beneficial); *Glinka v. Murad (In re Housecraft Industries, USA, Inc.)*, 310 F.3d 64, 71 (2d Cir. 2002) (finding that a grant of derivative standing to bring fraudulent conveyance claims under sections 548 and 549 was appropriate where trustee consented to creditor's joint prosecution of suit); *Cybergenics*, 330 F.3d 548 (3d Cir. 2003) (holding that a creditors' committee could sue under section 544(b) to avoid a fraudulent transfer where the debtor-in-possession unreasonably refuses to bring suit or where the trustee or the debtor-in-possession consents); *In re Pursuit Capital Mgmt., LLC*, 595 B.R. 631 (Bankr. D. Del 2018) (finding that a grant of derivative standing to Chapter 7 creditors was appropriate wherein trustee consented; underlying causes of action were fraudulent conveyance claims asserted under both section 548 of the Bankruptcy Code and under state law and Bankruptcy Code sections 544 and 550, as well as claims for breaches of fiduciary duty,

accounting and turnover[6]); *In re Pack Liquidating, LLC,* 22-10797 (CTG) (Bankr. D. Del. Feb. 2,

2024) (finding that *Cybergenics* did not limit a court's grant of derivative standing to prosecute

to avoidance actions under section 544(b), and that it may extend to other causes of action, such

as claims for breach of fiduciary duty, where debtors refused to bring suit); *La. World Exposition*

*v. Fed. Ins. Co.*, 858 F.2d 233 (5th Cir. 1988) (finding that, if authorized by a bankruptcy court, a

creditors' committee may pursue a complaint against debtor's officers and directors to include

causes of action arising under state law, e.g., gross negligence, mismanagement and breach of

fiduciary duty, where debtor-in-possession refused to bring suit); *In re Trailer Source,* 555 F.3d

231 (6th Cir. 2009) (holding that granting derivative standing to Chapter 7 creditor was proper

where trustee refused to bring claims pursuant to sections 544(b) and 550(a) for avoidance of

fraudulent or preferential transfers); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re*

*Gibson Group, Inc.),* 66 F.3d 1436, 1440-1441 (6th Cir. 1995) (holding that a creditor or

creditors' committee may have derivative standing to initiate an avoidance action for preferential

and fraudulent transfers under sections 547 and 548 of the Bankruptcy Code if debtor-in-

possession refuses to bring suit and other conditions of four-part test are met); *In re Dzierzawski,*

518 B.R. 415 (Bankr. E.D. Mich. 2014) (granting derivative standing to an unsecured creditor in

a Chapter 7 case to pursue fraudulent transfer claims under Michigan's version of the Uniform

Fraudulent Transfer Act, wherein trustee refused to bring suit due to estate's lack of funds); *In re*

*Full Spectrum Mgmt.*, 621 B.R. 421 (Bankr. W.D. Mich. 2020) (granting derivative standing to

Chapter 7 creditor, wherein trustee consented, to pursue complaint containing fourteen counts,

---

[6] The plaintiffs' complaint in *In re Pursuit Capital Mgmt., LLC* included additional claims for breach of
contract, conversion, and unjust enrichment. Those claims were stayed by the court as they were impacted
by provisions of a limited partnership agreement. The court did not otherwise indicate that such claims
were improper in the derivative standing suit.

including claims for recovery of various accounts receivable, as well as avoidance and recovery

of certain alleged fraudulent transfers under sections 544(b)(1) and 550 of the Bankruptcy Code,

and applicable state law); *In re Home Casual LLC*, 534 B.R. 350, 354 (Bankr. W.D. Wis. 2015)

(finding derivative standing appropriate in Chapter 7 action where creditors stood to recover

almost $470,000 in avoidable transfers at a low cost and risk to the estate, and where trustee

unjustifiably refused to bring preference and fraudulent transfer claims pursuant to sections 544,

547, 548 and 550 of the Bankruptcy Code and applicable state law); *PW Enters., Inc. v. N.D.*

*Racing Comm'n (In re Racing Services, Inc.)*, 540 F.3d 892 (8th Cir. 2008) (holding that a

creditor "may obtain derivative standing to pursue avoidance actions under circumstances in

which the trustee (or debtor-in-possession) either unjustifiably refuses to bring the creditor's

proposed claims or consents to the creditor pursuing such claims in his stead," where claims

were for avoidance of preferential and fraudulent transfers under sections 547 and 548 of the

Bankruptcy Code); and *Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029,

1031 (9th Cir. 1999) (finding that Chapter 7 creditors had derivative standing to pursue claims

under sections 544(b), 547, 548, and 549(a) of the Bankruptcy Code where trustee consented, but

finding that the suit was barred by the statute of limitations). *Cf. Cedar Rapids Lodge & Suites,*

*LLC v. Seibert*, No: 14-CV-04839 SRN/KMM, 2018 WL 747408 (D. Minn. Feb. 7, 2018)

(finding that Chapter 7 trustee's assignment of claims to judgment creditors was proper where

claims were avoidance of fraudulent transfers under section 544(b) of the Bankruptcy Code and

applicable state law, conspiracy to execute fraudulent transfers, and alter ego liability).

15.    Given the ample authority that exists to the contrary, Plaintiffs are a bit perplexed

as to the basis of Defendants' argument that the Court, in considering a grant of derivative

standing to Plaintiffs, should apply different standards to Plaintiffs' federally-based avoidance claims and to their pre-petition claims.

16.    In that regard, Plaintiffs also reviewed existing authority applicable to a somewhat analogous situation, that of a trustee's sale or assignment of fraudulent transfer claims to a non-trustee (generally a creditor or a creditors' committee). While sale or assignment cases sometimes contain similar factual circumstances as those in derivative standing cases, they are not relevant here.

17.    A trustee's sale or assignment of claims is governed by section 363 of the Bankruptcy Code, which provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than under the ordinary course of business, *property of the estate*." 11 U.S.C. § 363(b)(1) (emphasis added). The proper application of section 363 is thus predicated upon a determination of whether the claims to be sold or assigned are "property of the estate," as defined in section 541 of the Bankruptcy Code. There is no such requirement in the context of derivative standing.[7] *See In re Pursuit Capital Mgmt., LLC*, 595 B.R. at 665-66 (recognizing that different standards apply in the context of section 363 and in the context of derivative standing); *Cedar Rapids Lodge & Suites, LLC v. Seibert* , No: 14-CV-04839 at 26.

18.    While a determination of whether claims are "property of the estate," as defined in section 541, is not included in the standard applied in derivative standing cases, Plaintiffs' causes of action, the federally-based avoidance claims as well as the pre-petition claims, are

---

[7] The sole exception Plaintiffs found in the context of derivative standing is *La. World Exposition v. Fed. Ins. Co.*, in which the Fifth Circuit determined that the plaintiff's causes of action were "property of the estate" pursuant to section 541(a)(1) of the Bankruptcy Code. *Id.*, 858 F.2d 233 (5th Cir. 1988). The court in *In re Pursuit Capital Mgmt., LLC* also considered section 541, but that case involved a sale of claims as well as a grant of derivative standing. *Id.*, 595 B.R. 631.

indeed property of the estate.

19.     An apparent majority of courts, including but not limited to the First, Fifth,

Seventh, Eighth and Ninth Circuits, which have addressed a trustee's sale or assignment of

avoidance claims have determined that avoidance actions, both federally-created and state-law

based, are property of the estate within the meaning of section 541(a). *See, e.g., Morley v. Ontos,*

*Inc. (In re Ontos, Inc.), 478 F.3d 427, 431* (1st Cir. 2007) ("It is well established that a claim for

fraudulent conveyance [brought pursuant to § 544] is included within [11 U.S.C. § 541(a)(1)]";

finding also that breach of fiduciary duty, alter ego and successor liability claims were property

of the estate); *Briar Capital Working Fund Capital, LLC v. Remmert (In re South Coast Supply*

*Co.), 91 F.4th 376, 382* (5th Cir. 2024) (finding that preference claims arising under section 547

are property of the estate and may be sold); *Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 262*

(5th Cir. 2010) ("We conclude, therefore, that the fraudulent-transfer claims that the claims are

property of the estate under § 541(a)(1). In the alternative, the fraudulent-transfer claims became

estate property under § 544(b) and—like other estate property—may be sold pursuant to §

363(b).")[8] (citation omitted); *Nat'l Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705, 708–09 (7th

Cir. 1994) ("[T]he right to recoup a fraudulent conveyance, which outside of bankruptcy may be

invoked by a creditor, is property of the estate that only a trustee or debtor in possession may

pursue once a bankruptcy is under way."); *Pitman Farms v. ARKK Food Co. LLC (In re Simply*

*Essentials LLC), 78 F.4th 1006* (8th Cir. 2023) (holding that "Chapter 5 avoidance actions are

property of the estate" and noting that "[t]he Supreme Court has interpreted the definition of

'property of the estate' broadly, finding § 541(a)(1) can be read 'to include in the estate any

---

[8] Causes of action included state-law based fraudulent conveyance claims, alter ego (reverse veil-piercing), and a constructive-trust remedy.

property made available to the estate by other provisions of the Bankruptcy Code.'") (quoting

*United States v. Whiting Pools Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983));

*Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288 (9th Cir. BAP 2005)

("While there is some disagreement among courts about the exercise by others of the trustee's

bankruptcy-specific avoiding power causes of action, the Ninth Circuit permits such actions to be

sold or transferred.") (citing, *inter alia, Briggs v. Kent (In re Prof'l Inv. Props. of Am.)*, 955 F.2d

623, 625–26 (9th Cir. 1992) (ruling that a trustee's strong-arm powers were transferable to a

purchaser of the estate's claim to proceeds from sale of property and noting that "[i]f a creditor is

pursuing interests common to all creditors or is appointed for the purpose of enforcement of the

plan, he may exercise the trustee's avoidance powers") (other citations omitted). *See also In re

Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 518 (Bankr. S.D. Ohio 2021)

(concluding that avoidance actions involving pre-petition transfers are property of the estate

under section 541(a)(1) and could be sold); *In re Pursuit Capital Mgmt., LLC*, 595 B.R. 631

(finding that both avoidance claims and non avoidance claims of breach of fiduciary duty and

unjust enrichment were property of the estate and could be sold); *Cedar Rapids Lodge & Suites,

LLC v. Seibert* , No: 14-CV-04839 at 23 ("The cases strongly favor finding that 544(b) fraudulent

transfer claims here were property of the estate, and the Court so finds"; claims included

conspiracy and veil-piercing).

    20.    The Fifth Circuit in *La. World Exposition v. Fed. Ins. Co.*, which considered

section 541(a) in the context of derivative standing,[9] similarly found that state-law based actions,

including gross negligence, mismanagement and breach of fiduciary duty, are property of the

---

[9] The Fifth Circuit did not use the phrase "derivative standing" in its opinion, but the case has been widely cited in that context.

estate. "Section 541(a)(1)'s reference to 'all legal or equitable interests of the debtor in property'

includes causes of action belonging to the debtor at the time the case is commenced.... LWE's

cause of action against its officers and directors, therefore, is 'property of the estate.'" *Id.*, 858

F.2d at 247. "It is clear that a trustee — and, therefore, a debtor-in-possession — has the

authority to bring an action for damages on behalf of a debtor corporation against corporate

principals for gross negligence, mismanagement or breach of fiduciary duty where such an action

could have been asserted by the debtor corporation, or by its stockholders in a derivative action,

prior to bankruptcy." *Id.* at 247-248 (citing 4 Collier, Collier on Bankruptcy p 541.10 (15th ed.

1986) ("The estate created pursuant to Sec. 541 succeeds to any right of action the debtor

corporation may have to recover damages for misconduct, mismanagement, or neglect of duty by

a corporate officer or director.")) (other citations omitted).

21.     The Bankruptcy Code vests the trustee with the power and duty to bring various

causes of action, both federal and state-law based, including but not limited to avoidance and

recovery actions, for the purpose of maximizing the value of the estate. *See* 11 U.S.C. §§ 544-45,

547-50; *see also Cybergenics*, 330 F.3d 548; *In re Pursuit Capital Mgmt., LLC*, 595 B.R. 631.

The plain language of the Bankruptcy Code does not distinguish between the trustee's ability to

use this authority to bring federally-based claims, such as those under sections 547, 548 and 549,

and state-law based claims, such as those under section 544. *See In re Trailer Source*, 555 F.3d

231 ("[i]n addition to § 544, §§ 545, 547, 548, and 549 authorize avoidance actions for the

benefit of the estate - all with identical 'the trustee may' language."); *In re MortgageAmerica*

*Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983) ("The 'strong arm' provision of the [Bankruptcy]

Code, 11 U.S.C § 544, allows the bankruptcy trustee to step into the shoes of a creditor for the

purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all

creditors, not just those who win a race to judgment."); *In re Home Casual LLC*, 534 B.R. at 354

("Under 11 U.S.C. §§ 544, 547, and 548, the trustee may avoid any transfer of an interest of the

debtor in property which meets certain requirements. While the statutes clearly identify only the

trustee as the holder of this right, courts have allowed other parties to avoid transfers if they

could demonstrate derivative standing.") (citations omitted); *Cedar Rapids Lodge & Suites, LLC*

*v. Seibert*, No: 14-CV-04839 at 20 ("[A trustee's] 'avoidance powers' are derived from statute,

and most were created specifically for Chapter 7 bankruptcy proceedings. *See* 11 U.S.C. §§ 544,

547, 548. But the bankruptcy trustee is also empowered to step into the shoes of a creditor and

bring claims under state law.")

## II.    Section 327 of the Bankruptcy Code Does Not, and Should Not, Apply in the Context of Derivative Standing

22.     In previous filings, Defendants explicitly conflated Plaintiffs' request for

derivative standing to prosecute claims in this Case with the appointment of special counsel by a

trustee pursuant to section 327. *See Plaintiffs' Response to Motion to Dismiss of Defendants*

*Benjamin Srigley, et al.* (the "**Response to Motion to Dismiss**") at ¶ 27 ( Dkt. No. 15 (Adv. Pro.

No. 25-10009-ELG)); Reply to Response to Motion for Derivative Standing at ¶ 5-9 (Dkt. No.

32 (Case No. 23-00116-ELG)).

23.     Now Defendants seem to be arguing that, even if the plain language of section

327 does not apply in derivative standing cases, the standards of this section should apply.

24.     Plaintiffs have not found any derivative standing case applying section 327 of the

Bankruptcy Code, nor any other authority supporting Defendants' position. We suspect that this

requirement is one of Defendants' own creation.

25.    By its plain language, section 327 of the Bankruptcy Code cannot not apply in the

context of derivative standing. It provides, in pertinent part:

> [e]xcept as otherwise provided in this section, the trustee, *with the court's approval*, may
> employ one or more attorneys, ... or other professional persons, *that do not hold or*
> *represent an interest adverse to the estate, and that are disinterested persons*, to
> represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added). Thus, subject to certain exceptions,[10] section 327(a)

requires that attorneys employed by the trustee "not hold or represent an interest adverse to the

estate"[11] and that they be "disinterested persons." The Bankruptcy Code also requires that a

person appointed to serve as a Chapter 7 interim trustee, as well as a trustee in a Chapter 11, 12

or 13 case be a "disinterested person." *See, e.g.,* 11 U.S.C. §§ 701(a), 1104(b), 1163, 1183,

1202(a), and 1302(a).

---

[10] The exceptions relevant to the instant case are in subsections (c) and (d), which provide:

> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment
> under this section solely because of such person's employment by or representation of a creditor,
> unless there is objection by another creditor or the United States trustee, in which case the court
> shall disapprove such employment if there is an actual conflict of interest.

> (d) The court may authorize the trustee to act as attorney or accountant for the estate if such
> authorization is in the best interest of the estate.

Section 327(e) refers to the employment of an attorney who has represented the debtor in the case. As
such, this provision is not relevant to the Plaintiffs. Subsections (b) and (f) are also not relevant here. *See*
11 U.S.C. §§ 327(b) - (f).

[11] With respect to the requirement contained in section 327(a) that an attorney employed by the trustee
"not hold or represent an interest adverse to the estate," in the context of derivative standing, plaintiffs,
who are primarily creditors, generally have interests aligned with those of the other creditors and the
estate, i.e., to find and recover assets for the purpose of maximizing the estate's value. This is also true in
the instant case. Plaintiffs, whose claims represent an approximate 87.7% majority of claims against the
estate (as of the July 1, 2024 proof of claim deadline), hold no interest adverse to the estate or to any of
the estate's other creditors. In addition, the existence of adverse interests would be a factor considered by
the Court in determining whether to grant derivative standing, thus Plaintiffs will not discuss this
requirement further here.

26.    Presumably, Defendants' argument is that Mrs. Bandi may not be employed as an attorney in this Case as she is a creditor and thus not a "disinterested person."[12] *See* 11 U.S.C. § 101(14)(A). Applying similar logic, neither of the Plaintiffs, who are both creditors and thus not disinterested persons, could be appointed as trustees in this Case. Both applications, the latter in particular, provide straightforward examples as to why section 327 does not apply in derivative standing cases. Simply put, this reasoning would be in contradiction with the very logic of derivative standing.

27.    A grant of derivative standing allows a creditor to "step into the shoes of the trustee" for the limited purpose of pursuing claims authorized under Chapter 5 of the Bankruptcy Code for the benefit of the estate.[13] *See In re Pack Liquidating, LLC,* 22-10797 at 33-34 (citing *Cybergenics,* 330 F.3d 548; *La. World Exposition v. Fed. Ins. Co.,* 858 F.2d at 252). It does so because the disinterested person (the trustee) has either refused to fulfill its duty to prosecute colorable claims, or has consented to the suit of the interested person (the creditor), and the court has recognized that the suit is necessary and beneficial and that the interested person is in a better position to recover assets for the benefit of the estate than is the disinterested person. In other words, by its nature, derivative standing substitutes an interested person, e.g., an individual creditor or a creditors' committee, for a disinterested one, i.e., a trustee.

28.    Section 327 applies to the employment by a disinterested person (the trustee) of another disinterested person (an attorney or other professional). It would not make sense to apply

---

[12] Plaintiffs disagree that this is the case and further assert that exceptions to section 327(a) exist wherein a court could properly authorize appointment of a creditor as special counsel.

[13] Consider also that a creditor who has been granted derivative standing does not have succession rights to other powers and duties of the trustee, such as those codified in Chapter 3 of the Bankruptcy Code. The trustee continues to be the party responsible for case administration, and may still exercise the Chapter 3 powers, including those defined in section 327.

the restrictions contained in this section to an interested person (a creditor who has been granted derivative standing), thereby limiting the interested person's employment of attorneys to persons who are disinterested, among other issues. For example, the creditor's employment of an attorney would create an attorney-client relationship between those two parties, which would impose certain duties on the attorney with respect to the creditor individually, not to the trustee or the estate. And in any case, section 327 already contains an exception allowing the trustee to employ a creditor's attorney, effectively permitting such employment where there is no actual conflict of interest,[14] so even if section 327 were to apply in the context of derivative standing, which it does not, a creditor would also be able to rely on the exception contained in subsection (c). *See* 11 U.S.C. § 327(c); footnote 10 *supra*.

29.     Further, section 327 does not require the trustee to hire an attorney, but rather provides that "the trustee, with the court's approval, *may employ* one or more attorneys" and permits the court to authorize the trustee to act as attorney for the estate. 11 U.S.C. §§ 327(a) and (d) (emphasis added). Logic dictates that even if section 327 applied in derivative standing cases, which it does not, section 327 would not mandate that a creditor who has been granted derivative standing employ an attorney.

30.     In the instant case, Plaintiffs have not employed an attorney and nor are they required to do so. As regards plaintiffs representing themselves, one could say that as a practical matter, e.g., to facilitate the efficient functioning of the court system, it is preferable to have

---

[14] There is substantial authority addressing the meaning of "actual conflict of interest" in this context, which is beyond the scope of this supplemental brief. Suffice it to say that the conflict must be something more than the attorney's employment by or representation of a creditor.

counsel represent parties to litigation.[15] That said, federal law explicitly recognizes the right of

individuals to represent themselves in court. *See* 28 U.S.C. § 1654. Where limitations on *pro se*

representation exist, Plaintiffs doubt that they are due to practical concerns, but rather due to the

concerns that *pro se* plaintiffs may not be fully aware of their legal rights and may inadvertently

harm themselves or, in the context of representing a group of individuals or an entity, that *pro se*

plaintiffs might harm the rights of others or have adverse interests. Plaintiffs respectfully suggest

that the existence of adverse interests and potential harm to other creditors are factors this Court

will consider in deciding whether to grant derivative standing to Plaintiffs. *See also* footnote 11,

*supra.*

    31.    Plaintiffs further note that it was the Chapter 7 trustee in this Case, William Douglas

White (the "**Trustee**"), who suggested *as alternatives to the Plaintiff's request for consent to*

*derivative standing* that that Mrs. Bandi be employed "under Section 327(c) of the Bankruptcy

Code to authorize [her] to act as special counsel…for the bankruptcy estate to bring avoidance

actions" and that the Plaintiffs consider "fund[ing] the efforts of the bankruptcy estate to file an

avoidance action," which would also likely have involved section 327. *See* Motion for Derivative

Standing at ¶ 24 and Appendix E (Dkt. No. 29 (Case No. 23-00116-ELG)). *See also Reply to*

*Trustee's Response and Benjamin Srigley's Opposition to Motion for an Order Granting*

*Derivative Standing to Prosecute on Behalf of the Estate, Claims Against the Debtor, et al.* (the

"**Reply to Response to Motion for Derivative Standing**" at ¶ 9 (Dkt. No. 32 (Case No.

23-00116-ELG)). Again, the Trustee's suggestions were made outside of the context of derivative

standing.

---

[15] Of course, lawyers come in all stripes and sizes — some more experienced, some just out of law school, some who carefully follow the rules, others who bend them at every opportunity.

32.    Returning to the plain text of section 327, that section applies to the employment of attorneys by a trustee, not to the employment of attorneys by creditors. *See* 11 U.S.C. § 327(a) and ¶ 25, *supra*. Mrs. Bandi is not, nor is she seeking to be, employed as special counsel by the Trustee in this Case. In derivative standing cases, instead, attorneys for the plaintiff creditors or creditors' committees are generally not employed by the trustee, but by the creditors themselves.

33.    In common parlance, employment also involves compensation of some sort. Presumably the compensation of attorneys pursuant to section 327 would be paid with assets of the estate. As is often the situation in which derivative standing is requested, the estate in this Case currently has no assets. Thus, immediate compensation to Mrs. Bandi would not be possible. In any event, assuming Plaintiffs' suit is successful and assets are recovered, Mrs. Bandi is not seeking to be paid attorneys' fees by the estate. *See* Motion for Derivative Standing at ¶ 27 (Dkt. No. 29 (Case No. 23-00116-ELG)).

34.    Mrs. Bandi is not employed as an attorney at all in this Case.[16] Instead, the Plaintiffs are representing themselves and have been doing so since receipt of the Debtor's petition. The fact that Mrs. Bandi happens to be a licensed attorney is a separate issue and does not prohibit her from representing herself *pro se*. By its black letter language, section 327 does not apply to *pro se* plaintiffs.

---

[16] Even if she were properly admitted to practice before this Court, it would solely be to represent the Bandis jointly as counsel in this adversary proceeding, and in any case, she would not be compensated as an attorney. *See* Reply to Response to Motion for Derivative Standing at ¶ 6-7 (Dkt. No. 32 (Case No. 23-00116-ELG)). As section 327 does not apply to the employment of attorneys by creditors, it would not apply here.

35.    Derivative standing is an equitable remedy applied by bankruptcy courts, on a

limited case-by-case basis, using their powers as courts of equity. *See, e.g., In re Trailer Source*,

555 F.3d at 242-43; *Cybergenics*, 330 F.3d at 568. By its nature, derivative standing requires

court permission before a plaintiff is permitted to move forward. It is the court, acting as a

gatekeeper in place of the trustee, who must determine that the grant of derivative standing is in

the best interest of the estate and is necessary and beneficial to the fair and efficient resolution of

the bankruptcy proceedings. *See Cybergenics*, 330 F.3d at 568; *In re Pursuit Capital Mgmt.,*

*LLC*, 595 B.R. 631. This is a highly fact-specific inquiry. As such, it is this Court who is in the

best position to decide if the Plaintiffs should be allowed to continue with their suit.

36.    Although section 327 neither applies in the context of derivative standing, nor

applies to *pro se* plaintiffs, the likely safeguards intended by that section, e.g., to preserve and

protect the assets of the estate and to ensure that parties involved in the administration of the

estate act in its best interests, align with the issues that will be considered by this Court in

determining whether a grant of derivative standing is proper.

37.    In deciding whether to grant derivative standing to the Plaintiffs, this Court will

undertake a cost-benefit analysis to ensure that Plaintiffs' claims are in the estate's best interest

and whether they are necessary and beneficial to the fair and efficient resolution of the

bankruptcy proceedings. This analysis will also surely include a consideration of whether the

Plaintiffs' interests might be adverse to those of the other creditors or whether other creditors

might otherwise be harmed by the Plaintiffs' suit. We imagine that such consideration will be

balanced against the fact that, in the absence of the Plaintiffs' action, the estate will not recover

anything and consequently its creditors will receive no portion of their claims. *See* Motion for

22

Derivative Standing at ¶¶ 67-68 (Dkt. No. 29 (Case No. 23-00116-ELG)); Response to Motion to Dismiss at ¶ 32 ( Dkt. No. 15 (Adv. Pro. No. 25-10009-ELG)). In this regard, Plaintiffs again note that none of the other creditors, all of whom are sophisticated entities, have objected to the fact that Plaintiffs are representing themselves in this Case, nor have they objected to Plaintiffs' request for a grant of derivative standing or to the Complaint. *See* Response to Motion to Dismiss at ¶ 34 ( Dkt. No. 15 (Adv. Pro. No. 25-10009-ELG)). Here again, it is this Court who is in the best position to determine whether the Plaintiffs may properly pursue their claims in a *pro se* capacity.

38.     Finally, if this Court grants derivative standing to the Plaintiffs, the Court will be overseeing the Case moving forward, so again, there is no need for additional protections.

Dated: August 27, 2025

Respectfully submitted by:

FEDERICO M. BANDI                    -and-          ANGELA M. BANDI
3606 Chesapeake Street, NW                          3606 Chesapeake Street, NW
Washington, DC. 20008                               Washington, DC. 20008
Telephone: 773-612-4163                             Telephone: 773-620-1932
Email: fbandi1@jhu.edu                              Email: angela.bandi@yahoo.com